¶ IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REBECCA C. HAMMOND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-430 |
| | ) | |
| STRIP DISTRICT MEATS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

Presently before the Court is the Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) and brief in support filed in this matter by Defendant Strip District Meats, Inc. (Docket Nos. 10, 11), and the brief in opposition thereto filed by Plaintiff Rebecca C. Hammond (Docket No. 12). For the reasons set forth herein, Defendant's motion is denied.

**I. Background**

As the parties are well-acquainted with the factual background of this case, at this juncture the Court will present an abbreviated version of the facts – as alleged in the Complaint, and in the light most favorable to Plaintiff – that are relevant to the motion presently before the Court. Plaintiff is an adult individual who has generalized anxiety/panic disorder, a disability as defined by the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*. (Docket No. 1, ¶¶ 6, 14). Plaintiff was formerly employed as a clerk by Defendant, a local butcher selling various meat products. (*Id.* ¶¶ 10, 11). Plaintiff was terminated from her employment with Defendant, and in this action she alleges violations of her right to be free from employment discrimination and retaliation based upon her disability. (*Id.* ¶¶ 1, 10).

1

Specifically, on November 19, 2020, the day of her termination, Plaintiff left work to take her lunch break and to eat her meal in her car. (Docket No. 1, ¶¶ 23, 36). During her lunch break, Plaintiff had a series of panic attacks, and she was unable to leave her car and return to work at the end of her break. (*Id.*). At 2:30 p.m., Defendant's owner ("Ms. Bengele") sent Plaintiff a text message, asking about her absence. (*Id.* ¶ 24). Over the following few hours, Plaintiff sent Ms. Bengele text messages telling her about her disability, that she was having panic attacks, and asking to discuss accommodations, while Ms. Bengele sent various text messages in response. (*Id.* ¶¶ 25-34). At some point several hours into their text message exchange, Ms. Bengele send Plaintiff a text message that read, "I am saying you walked out on us. I am a small business I don't have the resources to help you. You need to go home and talk to your husband and maybe your doctor." (*Id.* ¶ 31). Plaintiff was terminated by Defendant that day. (*Id.* ¶ 36).

After she was terminated, Plaintiff filed timely charges with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission, and the EEOC issued a Notice of Right to Sue dated February 2, 2021. (Docket No. 1, ¶¶ 3, 4). On April 5, 2021, Plaintiff filed the present action. (Docket No. 1). In the Complaint, Plaintiff alleges causes of action under the ADA (First Cause of Action), and under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 *et seq.*, (Second Cause of Action). Defendant has moved to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and Plaintiff has opposed the motion. (Docket Nos. 10, 11, 12). Defendant argues that Plaintiff has failed to exhaust her administrative remedies, and that she has failed to aver facts sufficient to support her *prima facie* case of discrimination under the ADA. In response, Plaintiff asserts that she has exhausted her

administrative remedies and that she has pled plausible claims based on the termination of her employment.

For the reasons that follow, Defendant's Motion to Dismiss is denied.

## II. Standard of Review

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)). Moreover, while "this standard does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

It should be further noted, therefore, that in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "'does not impose a

probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)).

In the context of the claims presented here, Plaintiff's alleged failure to exhaust her administrative remedies is properly considered under Rule 12(b)(6). *See Robinson v. Dalton*, 107 F.3d 1018, 1021-22 (3d Cir. 1997); *Wilson v. MVM, Inc.*, 475 F.3d 166, 174-76 (3d Cir. 2007). In conducting its analysis, the Court may properly consider documents that were filed in Plaintiff's EEOC proceeding. *See Smith v. Pallman*, 420 F. App'x 208, 213 (3d Cir. 2011); *Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000), *aff'd*, 276 F.3d 579 (3d Cir. 2001).

### III. Legal Analysis

#### A. Exhaustion of Administrative Remedies

Defendant first argues that Plaintiff's claims should be dismissed because she has failed to exhaust her administrative remedies. The ADA provides for the same enforcement procedures and remedies as those available under Title VII. *See* 42 U.S.C. § 12117(a); *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 315 n.3 (3d Cir. 2006). Thus, a plaintiff who seeks relief under the ADA must first exhaust administrative remedies by filing a timely charge with the EEOC before filing a lawsuit in federal district court. *See Rogan*, 113 F. Supp. 2d at 783; 42 U.S.C. § 2000e-5(e)(1). "The EEOC will then investigate the charge, and the plaintiff must wait until the EEOC issues a right-to-sue letter before she can initiate a private action." *Barzanty v. Verizon PA, Inc.*,

361 F. App'x 411, 413 (3d Cir. 2010) (citing *Burgh v. Borough Council*, 251 F.3d 465, 470 (3d Cir. 2001)).

Similarly, in order to bring a lawsuit under the PHRA, "a plaintiff must first have filed an administrative complaint with the PHRC within 180 days of the alleged act of discrimination." *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997) (citing 43 Pa. Stat. and Cons. Stat. §§ 959(a), 962). Failure to do so precludes the availability of judicial remedies under the PHRA. *See id.* After a plaintiff has filed an administrative charge and received a right to sue notice, the plaintiff's lawsuit is then "limited to claims that are within the scope of the initial administrative charge." *Twillie v. Erie School Dist.*, 575 F. App'x 28, 31 (3d Cir. 2014).

Here, as explained, *supra*, Plaintiff dual-filed her charge with the EEOC and the PHRC on February 1, 2021. (Docket Nos. 1, ¶ 3; 11-2). The next day, on February 2, 2021, the EEOC issued a "Dismissal and Notice of Rights," indicating that Plaintiff had a right to sue Defendant under federal law based on the charge in federal or state court, and that such action had to be filed within 90 days of her receipt of the Notice. (Docket Nos. 1, ¶ 4; 11-3). Accordingly, Plaintiff filed this action on April 5, 2021. (Docket No. 1).

However, Defendant appears to argue that Plaintiff failed to exhaust her administrative remedies because she did not wait until after her charge had been pending with the EEOC for 180 days before filing the present lawsuit, and that Plaintiff should have waited until the 180-day period ended and requested a right-to-sue letter from the EEOC. (Docket No. 11 at 5). Title VII provides that the EEOC is to issue a notice to a party charging a violation (of Title VII or the ADA) if (1) the EEOC dismisses their charge, or (2) 180 days have passed and the EEOC has not taken certain actions, and then within 90 days a civil action may be brought against the respondent named in the charge. *See* 42 U.S.C. 2000e-5(f)(1); *see Evans v. Maax-KSD Corp.*,

Civ. Action No. 06-2804, 2006 WL 3488708, at *4 (E.D. Pa. Nov. 30, 2006). While the statute provides two instances in which the EEOC must issue a notice of suit rights, the language of the statute has been interpreted as not requiring that the EEOC wait the full 180 days until issuing a notice. See *Evans*, 2006 WL 3488708, at *4. As the District Court further explained in *Evans*:

> Indeed, if the EEOC dismisses a charge, it *must* issue a right to sue notice without the claimant (or EEOC) satisfying any other preconditions. To take a simple example: the EEOC could very well dismiss a charge just 10 days after receiving it. In that case, the statute does not contemplate a claimant waiting until 180 days has elapsed from the filing of his charge before receiving a right to sue notice. Rather, it requires the EEOC to issue a right to sue notice immediately. With respect to the 180-day provision, it isn't a minimum; it's a maximum - the maximum amount of time the EEOC can hold onto a complaint without filing a charge or obtaining a conciliation agreement.

*Id.*

Here, Plaintiff explains that she filed her charge with the EEOC, and then she received a "no cause determination" from the agency.[1] (Docket No. 12 at 5 & n.1). The "Dismissal and Notice of Rights" that Defendant attached to its brief instructed Plaintiff that the EEOC would not proceed further with its investigation of her charge, that such Notice was the only notice of dismissal she would receive, and that she may file a lawsuit against the respondent based on the charge but must do so within 90 days of her receipt of the Notice. (Docket No. 11-3). The administrative prerequisites to a claim such as Plaintiff's are "(1) the filing of charges with the EEOC and (2) receipt of the EEOC's notice of the right to sue." *Johnson v. Allegheny Cnty.*, No. 2:17-cv-01173, 2018 WL 4178186, at *4 (W.D. Pa. Aug. 13, 2018), *report and recommendation adopted*, Civ. Action No. 2:17-cv-01173, 2018 WL 4153685 (W.D. Pa. Aug. 29, 2018)

---

[1] Plaintiff notes in her opposition brief that she contacted the EEOC, *pro se*, shortly after her termination and her charge was assigned a docket number, despite the fact that her "formal charge" was not filed until February 1, 2021. (Docket No. 12 at 5).

(citing *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976)). The Court finds that Plaintiff has satisfied both requirements here.[2]

Under the circumstances presented, the Court therefore finds that Plaintiff did not fail to exhaust her administrative remedies before filing the present action.

### B. Plaintiff's *Prima Facie* Case of Discrimination

To establish a *prima facie* case of discrimination under the ADA, a plaintiff must allege the following three elements: (1) he or she is a disabled person within the meaning of the ADA; (2) he or she is otherwise qualified to perform the essential functions of the job, with or without the employer's reasonable accommodations; and (3) he or she has suffered an adverse employment decision as a result of discrimination. *See Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998). Here, Plaintiff alleges that her discharge was an adverse employment action that she suffered as a result of discrimination. (Docket No. 1, ¶¶ 44, 45). Defendant argues, however, that Plaintiff has failed to plead the third element of her *prima facie* case of disability discrimination under the ADA, that she suffered an adverse employment decision as a result of discrimination.[3]

More specifically, Defendant asserts that Plaintiff did not disclose her disability to her employer until after she left work on November 19, 2020, and then failed to return to work. (Docket No. 1, ¶¶ 15, 23). Defendant contends that Plaintiff was fired for violating a company

---

[2] To the extent that Defendant may be hinting in its brief that Plaintiff has not exhausted her administrative remedies because the EEOC has not fulfilled its duties in some way, "[a]s courts have held for decades, '[a] Title VII complainant is not charged with the commission's failure to perform its statutory duties.'" *Johnson v. Allegheny Cnty.*, 2018 WL 4178186, at *4 (quoting *Russell v. American Tobacco Co.,* 528 F.2d 357, 365 (4th Cir. 1975) and citing *Evans*, 2006 WL 3488708, at *3 ("While it is a well-established tenet of administrative law that a Title VII or ADA plaintiff must exhaust his administrative remedies before seeking judicial relief, it is equally well-established that such a plaintiff is also not charged with the [EEOC's] failure to perform its statutory duties." (internal citation and quotation marks omitted)).

[3] The Court notes that, in its Motion to Dismiss, Defendant addresses whether Plaintiff has adequately alleged an ADA claim, but Defendant does not address Plaintiff's claim under the PHRA. Indeed, in setting forth the factual background, Defendant explains only that Plaintiff brings this action under the ADA. (Docket No. 11 at 2). Accordingly, the Court does not address the plausibility of Plaintiff's PHRA claim herein either.

policy, citing a purported policy attached to its brief entitled "Policy for Discharge" that lists "Leaving work without consulting with supervisor and getting proper authorization" as a terminable offense. (Docket No. 11-4). Defendant further argues that, because Plaintiff violated a company policy prior to informing Defendant that she was disabled (or requesting accommodation), Defendant's decision to terminate Plaintiff could not be the result of discrimination.

There are several problems with Defendant's argument. First of all, logically, Defendant allegedly knew of Plaintiff's disability prior to terminating her employment, so the decision to fire her could have been the result of discrimination – regardless of whether Plaintiff had also violated a company policy prior to being terminated. Also, Defendant's contention – that Plaintiff was fired because she violated a company policy rather than because of her disability – does not show that Plaintiff has not pled her *prima facie* case, but merely presents an alternative fact pattern. Thus, as Plaintiff points out, Defendant's alternative fact pattern could constitute an affirmative defense or a legitimate non-discriminatory reason for Defendant's action, which could be raised in its answer and might be used to show pretext, but it does not show that she has failed to plead the third element of her *prima facie* case of discrimination.[4] Additionally, unlike the two EEOC filings that Defendant has attached to its brief (which are properly before the Court at this juncture), the purported policy document that Defendant has attached in support of

---

[4] An ADA claim of discrimination is analyzed under the familiar burden shifting of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248 (1981). *See Rubano v. Farrell Area Sch. Dist.*, 991 F. Supp. 2d 678, 699-700 (W.D. Pa. 2014). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *See id.* (citing *McDonnell Douglas,* 411 U.S. at 802). Then, if the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for taking the adverse employment action. *See id.* If the employer carries its burden, the burden shifts back to the plaintiff who must prove by a preponderance of the evidence that the employer's proffered legitimate reason was merely pretext for discrimination, and not the actual motivation underlying the adverse employment action. *See id.* at 700 (citing *Burdine,* 450 U.S. at 252–53; *McDonnell Douglas,* 411 U.S. at 804).

its alternative fact pattern is not properly before the Court in connection with its motion under Rule 12(b)(6).[5] Therefore, the Court cannot consider that document to be determinative in the context of Defendant's motion pursuant to Rule 12(b)(6).

Accordingly, the Court finds that Plaintiff has adequately pled the third element of her *prima facie* case of discrimination under the ADA, that she suffered an adverse employment decision as a result of discrimination based on her disability.

## IV. Conclusion

For the reasons stated, Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is denied.

An appropriate Order follows.

Dated: September 29, 2022	*s/ W. Scott Hardy*
	W. Scott Hardy
	United States District Judge

cc/ecf: All counsel of record

---

[5] Generally, a district court may not consider matters outside of the complaint when ruling on a motion to dismiss pursuant to Rule 12(b)(6). Nevertheless, in ruling on a Rule 12(b)(6) motion, courts may consider: (1) exhibits that are attached to the complaint; (2) matters of public record; and (3) any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the document is integral to or explicitly relied upon in the complaint. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).
   The two EEOC documents attached to Defendant's brief (Docket Nos. 11-2, 11-3) are public records. *See U.S. Equal Emp. Opportunity Comm'n v. Norfolk S. Corp.*, No. 2:17-cv-01251, 2018 WL 4334615, at *4 (W.D. Pa. Sept. 11, 2018) (citing *Stull v. Leedsworld,* C.A. No. 2:17-CV-00378, 2018 WL 576241, at *3 n. 2 (W.D. Pa. Jan. 26, 2018) ("[T]he decisions of district courts within this circuit that have held an EEOC charge of discrimination and other related documents (e.g., right to sue letter, intake questionnaire) are public records, and therefore, a court may consider these documents without converting a motion to dismiss into a motion for summary judgment.")). However, the purported policy document attached to Defendant's brief (Docket No. 11-4) is neither a public record, nor is it an undisputedly authentic document that is integral to or explicitly relied upon in the Complaint. The Court therefore will not include such document in considering Defendant's Motion to Dismiss, nor will the Court treat Defendant's motion as a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").